HADLOCK, J.
*530 Claimant seeks judicial review of an order of the Workers' Compensation Board upholding Liberty Northwest Insurance Corporation's denial of his medical services claim for a prescription medication known as Gralise. Liberty denied the claim for the reason that Gralise was not prescribed for treatment of claimant's compensable disc herniation but rather was directed to denied conditions of radiculitis, post-laminectomy syndrome, and neurofibrosis. Claimant contends that the board erred, because the medical evidence shows that the Gralise is also prescribed for the compensable disc herniation. We review the board's order for substantial evidence and errors of law, ORS 183.482(8)(a), (c), conclude that the board did not err, and affirm.
Claimant has a history of non-work-related low-back conditions and surgeries. In 2003, claimant had a laminectomy surgery for a large central and right-sided disc herniation at the L5-S1 level. Claimant sought medical care in January 2011 for hip and back pain, with numbness, tingling, and muscle spasms in the right leg. In March 2011, claimant had a second surgery at L5-S1, to address scarring with severe compression of the S1 nerve root, related to the previous laminectomy. Claimant believed that the second surgery improved his symptoms by 50 percent. Claimant's pain level continued to diminish with physical therapy.
In May 2011, claimant slipped on ice at work and twisted his back. The severity of claimant's pain returned, along with weakness, and he filed an injury claim. Claimant's physician diagnosed "recurrent L5-S1 disc protrusion on the right as a result of an on-the-job injury[.]" Claimant had a third surgery in late May 2011, to address continued scarring and to remove additional disc fragments.
Liberty denied a claim for compensation, but, after a hearing, an administrative law judge determined that the need for the third surgery was work-related, and Liberty notified claimant of its acceptance of a claim for "recurrent disc herniation at L5-S1." Liberty later modified its notice of acceptance to describe acceptance of "a recurrent herniated *531 disc at L5-S1 combined with preexisting, noncompensable, degenerative disc disease." Claimant subsequently sought acceptance of new medical conditions-radiculitis, post-laminectomy syndrome, and neurofibrosis-as a part of his claim. In January 2013, Liberty issued a "ceases denial" with respect to the May 2011 claim.[1] In April 2013, the parties entered a stipulation through which claimant withdrew his new medical condition claims in exchange for Liberty's withdrawal of the modified notice of acceptance. The end result was that the claim for recurrent disc herniation at L5-S1 remained accepted.
In July 2013, claimant again requested acceptance of radiculitis, post-laminectomy syndrome, and neurofibrosis as new medical conditions. The claim for those conditions was resolved through a disputed claim settlement *929 (DCS) that awarded claimant a lump sum of $10,000 in exchange for claimant's stipulation to a denial of the new medical conditions. The DCS, which the board approved, included the statement of Liberty's position that
"claimant's conditions of a right S1 radiculitis, post-laminectomy syndrome, neurofibrosis, and need for medical treatment and disability are not, in any way or degree of contribution, the result or consequence of claimant's on the job injury of May 4, 2011 * * *. The conditions denied as noted above and the need for medical treatment are due to non-compensable, preexisting conditions, neither caused nor worsened by claimant's on the job injury of May 4, 2011."
The DCS also included a statement that
"claimant understands and stipulates that the denial entered in this case shall be construed to include the contentions of [Liberty] as set forth above, and that the denial issued, including the contentions of [Liberty] as set forth above, shall forever remain in full force and effect, and that the execution of this document shall constitute a full and final waiver of the claimant's right to challenge or appeal from the denial, and claimant stipulates and agrees that *532 the legal effect of this settlement shall be the same as if the claimant admitted and agreed to the accuracy of the contentions of [Liberty] as set forth above."
The DCS included claimant's agreement with the statement that he had been advised that, upon approval of the settlement, "claimant's right to seek workers' compensation benefits concerning this claim would be extinguished." Claimant also agreed that he "waives his right to file a claim for any other condition associated with or arising out of his denied claim[.]"
Through a claim disposition agreement (CDA) executed in July 2014, claimant received a lump sum award of $78,000 for the compensable recurrent disc herniation and released all rights to further benefits except medical services. As claimant correctly notes, the only benefits available to claimant after the DCS and the CDA are medical services associated with the accepted claim for recurrent L5-S1 disc herniation.
Claimant continued to suffer radicular symptoms that his attending physician, Dr. Takacs, diagnosed as nerve pain and described variously as radiculitis, radiculopathy, post-laminectomy syndrome, and neurofibrosis. Takacs prescribed Gralise for the nerve pain, which gave claimant marked relief. Liberty denied the compensability of the Gralise, on the basis that it was prescribed for treatment of conditions that had been denied through the DCS, rather than for the accepted recurrent disc herniation. Claimant requested a hearing.
The board, in affirming the order of an administrative law judge and upholding Liberty's denial, relied on the deposition testimony of Takacs, who explained that Gralise is a medication prescribed for treatment of nerve pain and had been prescribed to claimant for treatment of nerve pain. Takacs explained that, although claimant's compensable disc herniation may contribute materially (but no more than 20 percent) to his nerve pain, the disc herniation is not the major contributing cause of the nerve pain; rather the nerve pain is caused in major part by claimant's preexisting back condition.
*533 Finding that the Gralise had been prescribed for nerve pain that was not compensable under the terms of the DCS, the board held that the medication was not causally related to the work-related injury and therefore was not compensable.[2]
*930 On judicial review, citing ORS 656.245, claimant contends that the medical evidence that claimant's disc herniation makes a 20 percent contribution to his nerve pain is sufficient to establish a compensable connection between the accepted recurrent disc herniation and the need for treatment of the nerve pain, even though the nerve pain conditions themselves are not compensable.
Claimant is incorrect. Takacs opined that the Gralise would not have been prescribed only for a disc herniation; rather it is a medication directed to nerve pain. The DCS extinguished claimant's right to further benefits for the nerve pain conditions. The board found that the Gralise was prescribed for the noncompensable "radiculitis condition."[3] The board's finding is supported by substantial evidence. In light of the DCS, the fact that there is medical evidence that the compensable disc herniation contributes to the nerve pain does not make treatment of the nerve pain *534 compensable.[4] Because claimant is not entitled to compensation for the nerve pain conditions, and because substantial evidence supports the board's finding that the Gralise is prescribed for or directed to treatment of those nerve pain conditions and not the accepted recurrent disc herniation, we affirm the board's order that the medication is not compensable.
Affirmed.

As pertinent here, a "ceases denial" refers to an insurer's ability to deny a combined condition "if the otherwise compensable injury ceases to be the major contributing cause" of the combined condition, even though the insurer previously accepted the combined condition. ORS 656.262(6)(c) (emphasis added).

The administrative law judge also upheld Liberty's denial, but on the theory that the Gralise had been prescribed for a combined condition, which was not compensable because the medical evidence showed that the otherwise compensable injury was not the major contributing cause of the combined condition. ORS 656.005(7)(a) ; ORS 656.245(1)(a). The parties continue to dispute whether that determination was correct, with claimant asserting that there was no "combining" of conditions and that the treatment is compensable under ORS 656.245(1) (a), because the compensable work injury was a material cause of the need for treatment. Liberty, in contrast, asserts that the work injury combined with preexisting conditions to cause a need for treatment, and that the treatment is not compensable because the work injury was not the major contributing cause of the combined condition.
However, the board did not base its order on a finding that the medication was prescribed for a combined condition. Rather, the board found that the medication was prescribed for nerve pain that is not compensable under the terms of the DCS. As we have explained, that finding is supported by substantial evidence.

Claimant faults the board for finding that the Gralise was prescribed for "radiculitis," when Takacs testified that he would gravitate more toward a diagnosis of radiculopathy, which he described as a more generalized, chronic condition than radiculitis, which is limited to nerve irritation. Read in context, however, we conclude that the board used the term "radiculitis" as shorthand reference to the nerve pain conditions for which Takacs explained he had prescribed the Gralise.

ORS 656.245(1) states:
"For every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for conditions caused in material part by the injury[.]"
As the Supreme Court said in SAIF v. Sprague , 346 Or. 661, 674, 217 P.3d 644 (2009), under ORS 656.245, "[t]here is no requirement that the need for medical services be directly 'caused by' the original compensable injury at all." In the absence of the DCS disposing of claimant's entitlement to any benefits for the nerve pain conditions, in which claimant stipulated to Liberty's position that the nerve pain conditions are denied and not materially related to his work injury, claimant may have been entitled to the Gralise treatment under ORS 656.245(1), as a medical service for treatment of conditions caused in material part by the accepted recurrent disc herniation.